IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| WAYNE CRAWFORD and CARDIFF FORK LANDOWNERS ASSOCIATION,<br><br>　　　Plaintiffs,<br><br><br>　v.<br><br><br>SALT LAKE COUNTY, STATE OF UTAH, UNITED STATES DEPARTMENT OF AGRICULTURE, and UNITED STATES FOREST SERVICE,<br><br>　　　Defendants. | Case No. 2:06-CV-106 PGC<br><br><br><br>**AMENDED REPORT AND RECOMMENDATION AND ORDER** |

Plaintiffs filed this action in state court to obtain a declaratory judgment acknowledging that Plaintiffs have vested title in the Cardiff Fork Road right-of-way.  The Defendants United States Department of Agriculture and United States Forest Service (hereafter referred to as "Defendants USDA-USFS") removed the action to this court.

Currently before the court is *pro se* Plaintiff Crawford's Motion for Default Judgment (Document #33), Plaintiff Crawford's Motion to Sever Defendant and Remand to State Court (Document #3), a Motion to Dismiss filed by Defendants USDA-USFS (Document #17), Plaintiff Crawford's Motion for Injunction (Document #14), and Plaintiff Cardiff Fork Landowners Association's Motion for

Leave to Supplement Plaintiff's Opposition to the Federal

Defendant's Motion to Dismiss (Document #40).[1]  Defendants USDA-

USFS argue that this court must dismiss Plaintiffs' complaint

because the court lacks subject matter jurisdiction in this case.

Having carefully considered the parties' pleadings and oral

arguments, the court recommends that Plaintiff's Motion for

Default Judgment be denied and that Defendants' Motion to Dismiss

be granted.  The court also orders that Plaintiff's Motion to

Sever and Remand is denied, Plaintiff's Motion for Injunction is

moot, and Plaintiff's Motion for Leave to Supplement is denied.

### BACKGROUND

Plaintiffs assert that the Cardiff Fork Road, also known as

the Mill D South Fork Road, connects Big Cottonwood Canyon to

Little Cottonwood Canyon through Cardiff Pass.  Plaintiffs allege

that it is an R.S. 2477 right-of-way.

R.S. 2477 was passed as part of the Mining Act of 1866 and

provides in its entirety:  "And be it further enacted, That the

right-of-way for the construction of highways over public lands,

not reserved for public uses, is hereby granted."  Mining Act of

July 26, 1866, § 8, 14 Stat. 253, formerly § 2477 of the Revised

---

[1]Also pending before the court is Plaintiff Crawford's Cross
Motion for Summary Judgment (Document #23) and Plaintiff Cardiff
Fork Landowners Association's Motion for Leave to Supplement the
Record on Plaintiffs' Motion for Summary Judgment (Document #37).
On April 3, 2006, the court granted Defendants USDA-USFS' motion
requesting that the court postpone briefing on the Motion for
Summary Judgment until the court ruled on the Motion to Dismiss.
(Documents #28, 29.)

Statutes and later 43 U.S.C. § 932, *repealed by* Federal Land Policy Management Act of 1976 (hereafter referred to as "FLPMA"), § 706(a), Pub. L. No. 94-579, 90 Stat. 2793.   Until its repeal in 1976, this statute set out an open-ended offer from the United States to the public of a right-of-way across unreserved public lands.   *See Sierra Club v. Hodel*, 848 F.2d 1068, 1078 (10th Cir. 1988), *overruled on other grounds by Village of Los Ranchos de Albuquerque v. Marsh*, 956 F.2d 970 (10th Cir. 1991), 956 F.2d 970 (10th Cir. 1992).   An R.S. 2477 right-of-way is "a species of easement across the public lands of the United States."   *United States v. Garfield County*, 122 F. Supp. 2d 1201, 1242 (D. Utah 2000) (citing *Hodel*, 848 F.2d at 1083).   This offer was accepted, and a valid R.S. 2477 right-of-way created, by the construction of a road open and used by the public on public lands that were not reserved at the time of acceptance.   *See* R.S. 2477; *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 147 F. Supp. 2d 1130, 1138-45 (D. Utah 2001); *Fitzgerald v. United States*, 932 F. Supp. 1195, 1204 (D. Ariz. 1996).   R.S. 2477 rights-of-way that existed and were perfected on the date of the repeal of R.S. 2477 remain valid and enforceable.   See FLMPA, 43 U.S.C. § 1769.

According to Plaintiffs, the Cardiff Fork Road was initiated in 1871 to enable miners to get to a mine in the Mill D South Fork area of Big Cottonwood Canyon, also known as Cardiff Fork. Plaintiffs allege that by 1904, there were dozens of mining

3

properties in Cardiff Fork, all utilizing the Cardiff Fork Road and its spurs. According to Plaintiffs, Cardiff Fork is mountainous terrain approximately four square miles in size and is now roughly 40 percent privately owned. Plaintiffs allege this land is owned independently by dozens of owners in parcels ranging from less than one acre to multiple contiguous 20-acre parcels.

According to Plaintiffs, following the passage by Congress in 1866 of the federal grant establishing R.S. 2477 rights-of-way, those people who constructed the Cardiff Fork Road filed formal notice in the public record of their acceptance of the federal grant for the Cardiff Fork Road. Plaintiffs allege the notice was filed on June 30, 1871. (Document #15, Exhibit 1.)

Plaintiffs allege the United States Surveyor General surveyed the area in 1903 in preparation for the creation of the Wasatch Forest in 1906, and that his survey shows the Cardiff Fork Road. According to Plaintiffs, in 1904, a reporter from the Salt Lake Mining Review traveled to the Cardiff Fork area and took a photograph, which allegedly shows the Cardiff Fork Road. (Document #22, at 6.) In addition, Plaintiffs allege W.H. Child & Co. published a map of the Cardiff Fork area showing extensive ownership by various competing entities all using the Cardiff Fork Road. (Document #22, at 6 & Exhibit 1.) The Wasatch Forest Reserve was created in 1906. According to Plaintiffs, at that time, the Cardiff Fork Road was apparent to casual inspection of

the property.  Plaintiffs, allege that the March 14, 1916 minutes of the Salt Lake County Road Commission appropriated public funds for the widening, grading, and ongoing maintenance of the Cardiff Fork Road.  (Document #22, at 6 & Exhibit II.)

Plaintiffs assert, and have submitted an exhibit to so show, that in 1985, a Salt Lake District Ranger of the Wasatch Cache National Forest wrote in a letter, "We have also taken the position that there is a prescriptive public right of access and that such public use of the road is significant and important. This road serves as access to the popular Doughnut Falls trailhead and the Cardiff Mine area."  (Document #22, Exhibit II.)

Plaintiffs claim that in 1987, Defendants USDA-USFS admitted that a prescriptive public right of access exists.  (Document #22, at 7.)

According to Plaintiffs, the Cardiff Fork Road was used heavily until it was gated by the Forest Service in approximately 1991.  Plaintiffs allege that the gating of the Cardiff Fork Road solved a substantial trespass problem with which the landowners had been burdened.  Plaintiffs assert that landowners continued to use the Cardiff Fork Road until approximately 2001, at which time the Forest Service locked out the landowners and refused to accept an R.S. 2477 claim unless it came from Salt Lake County.

On May 29, 2003, Salt Lake County Deputy District Attorney Jeffrey H. Thorpe sent Plaintiff Crawford a letter.  In that

letter, Mr. Thorpe wrote, "Salt Lake County is of the position that this road is a valid R.S. 2477 right-of-way, which is currently being claimed jointly by Salt Lake County and the State of Utah.  This right-of-way has not been vacated by the County or the State.  This road is apparently being claimed and controlled by the Forest Service, which has installed locked gates and is currently controlling access."  (Document #1, Amended Petition for Declaratory Judgment, Exhibit A.)

On December 16, 2003, the Salt Lake County Mayor requested "the withdrawal from consideration as candidates for R.S. 2477 claim status" several roads, including Cardiff Fork Road. (Document #5, Exhibit A.)

Defendants USDA-USFS assert that in 2003, Defendants USDA-USFS offered special use permits for ten years, which would renew prior permits, for motorized access to private property to those landowners who completed applications, including Plaintiff Crawford.  (Document #18, at 7 n.4.)

In an October 27, 2005 letter to Plaintiff Crawford, State Assistant Attorney General Jaysen Oldroyd explained that due to the County's letter, the State had determined "it should not take action to resolve the R.S. 2477 status of the road without the support of Salt Lake County" because "[u]nder Utah law the State and Salt Lake County are joint owners of any R.S. 2477 rights-of-way in the County," so "the State is not well positioned unilaterally to assert that Cardiff Fork Road is an R.S. 2477

6

right-of-way." (Document #4, Exhibit B.)  Mr. Oldroyd continued,

"The Client Committee would be willing, however, to revisit your

concerns regarding Cardiff Fork Road if Salt Lake County retracts

its earlier request that Cardiff Fork Road not be considered an

R.S. 2477 candidate road."

On January 23, 2006, Plaintiffs filed this action in Utah

State Third District Court. (Document #1, at 2.)  On February 3,

2006, Defendants USDA-USFS filed a Notice of Removal in this

court, and the case was assigned to United States District Judge

Paul Cassell. (Document #1.)  On February 7, 2006, Plaintiff

Crawford filed a motion requesting that the court sever

Defendants USDA-USFS, the federal defendants, from this case and

remand the remainder of the case to state court. (Document #3.)

On February 22, 2006, Plaintiff Crawford filed a motion

requesting the court enter an order of injunction "enjoining the

USDA-USFS from interfering with Plaintiffs['] use of the Cardiff

Fork road during the pendency of this action." (Document #14, at

1.)  On February 24, 2006, Judge Cassell referred the case to

United States Magistrate Judge Samuel Alba pursuant to 28 U.S.C.

§ 636(b)(1)(B).

On March 13, 2006, Defendants USDA-USFS filed a Motion to

Dismiss. (Document #17.)  On March 23, 2006, Plaintiff Crawford

filed a Memorandum in Opposition to the Motion to Dismiss and a

Cross Motion for Summary Judgment. (Documents #22, 23.)  On

March 27, 2006, Plaintiff Cardiff Fork Landowners Association

filed a Memorandum in Opposition to Defendants' Motion to Dismiss.  (Document #24.)  Defendants USDA-USFS filed a Reply to the memoranda in opposition to their Motion to Dismiss on March 31, 2006.  (Document #25.)[2]  On April 3, 2006, the court granted a motion submitted by Defendants USDA-USFS requesting that the court postpone briefing on the Motion for Summary Judgment until the court ruled on the Motion to Dismiss.  (Documents #28, 29.)  On April 10, 2006, Plaintiff Crawford filed a Motion for Default Judgment as to Defendants USDA-USFS.  (Document #33.)  Defendants USDA-USFS filed a Response to that Motion for Default Judgment on April 11, 2006.  (Document #35.)

On April 27, 2006, the court held oral arguments on the Motion for Injunction, the Motion to Sever and Remand to State Court, and the Motion to Dismiss.  (Document #36.)

## ANALYSIS

Plaintiffs seek a declaratory judgment.  Plaintiffs ask that the declaratory judgment recognize that because the State and County allegedly have abandoned their claims to the Cardiff Fork

---

[2]On March 31, 2006, Defendants USDA-USFS also filed a Motion to Strike any pleadings submitted by Cyle Buxton, who is not an attorney, on behalf of Plaintiff Cardiff Fork Landowners Association.  (Document #26.)  On April 10, 2006, Gary B. Ferguson, an attorney, entered an appearance on behalf of Cardiff Fork Landowners Association.  (Document #32.)  As a result, at the April 27, 2006 hearing, the court declared the Motion to Strike as moot.  (Document #36.)  In addition, the pleadings filed by Cyle Buxton on behalf of Cardiff Fork Landowners Association were withdrawn.

Road right-of-way, pursuant to Utah Code Annotated § 72-5-105,[3] Plaintiffs allegedly now have the right to vested title in the Cardiff Fork Road right-of-way.

Plaintiffs argue that when Cardiff Fork Road was accepted and notice filed in the Salt Lake County Recorder's Office in 1871, all federal interest in the Cardiff Fork Road right-of-way was granted and accepted out of federal interest.  Plaintiffs further argue that therefore, the Wasatch Forest Reserve acquired its lands subject to the Cardiff Fork Road right-of-way. Plaintiffs argue that the State of Utah and Salt Lake County, who jointly owned the Cardiff Fork Road, then abandoned their interest in it when they did not take action to resolve the R.S. 2477 status of the road.  Plaintiffs argue that the road has never been abandoned by land owners using the road for property

---

[3]Plaintiffs argue that they acquired the right to vested title in the R.S. 2477 right-of-way pursuant to Utah Code Annotated § 72-5-105.  That statute provides, in relevant part:
> (1) All public highways, streets, or roads once established shall continue to be highways, streets, or roads until abandoned or vacated by order of a highway authority having jurisdiction or by other competent authority.
> (2)(a) For purposes of assessment, upon the recordation of an order executed by the proper authority with the county recorder's office, title to the vacated or abandoned highway, street, or road shall vest to the adjoining record owners, with ½ of the width of the highway, street, or road assessed to each of the adjoining owners.

Utah Code Ann. § 72-5-105(1), (2)(a).

access or public use.   Plaintiffs argue that Utah Code Annotated
§ 72-5-105 then operated to give them, as the adjacent landowners
to the Cardiff Fork Road, rights to the vested interest in the
right-of-way.   Thus, Plaintiffs want to be declared as having
vested title as private successors to Salt Lake County and the
State of Utah in the Cardiff Fork Road R.S. 2477 right-of-way.

Notably, Plaintiffs repeatedly argue that Defendants USDA-
USFS have no interest in the Cardiff Fork Road and should not be
a part of the declaratory judgment action.   Plaintiffs explain
that they named the USDA-USFS as defendants in this action
because a state court allegedly erroneously determined they were
necessary parties to this action.

The court now addresses Plaintiff's Motion for Default
Judgment, Plaintiff's Motion to Sever Defendant and Remand to
State Court, Defendant's Motion to Dismiss, and Plaintiff's
Motion for Injunction.   The court addresses each of these motions
in turn.

### A.   Plaintiff's Motion for Default Judgment

First, the court addresses Plaintiff's Motion for Default
Judgment.   (Document #33.)   Plaintiff argues in his motion that
Defendants USDA-USFS failed to plead or otherwise defend by March
27, 2006, the deadline for Defendants USDA-USFS to respond to
Plaintiff's case.

The court concludes that Plaintiff's Motion for Default
Judgment lacks merit.   As Defendants USDA-USFS pointed out in

their response to Plaintiff's motion, Defendants USDA-USFS obviously responded in a timely way to Plaintiff's lawsuit by filing their Motion to Dismiss on March 13, 2006. (Document #17.) By so doing, Defendants USDA-USFS pleaded or otherwise defended in a timely way, as required by Rule 12 of the Federal Rules of Civil Procedure. As a result, the court recommends that Plaintiff's Motion for Default Judgment be denied.

### B. Plaintiff's Motion to Sever and Remand to State Court

Second, the court addresses Plaintiff's Motion to Sever Defendant and Remand to State Court. (Document #3.) In that motion, Plaintiff Crawford requests that the court sever all claims against the county and state defendants and remand that portion of the case back to state court, essentially severing Defendants USDA-USFS from the action involving the state and county defendants. Plaintiff Crawford argues that such a severance and remand is appropriate because "[t]his action concerns the succession of title under a Utah Statute to an existing R.S. 2477 right of way. Because this right of way has been granted out of federal ownership and has been claimed jointly by Salt Lake County and the State of Utah, it is unlikely that there is any federal land involved." (Document #3, at 1.) Plaintiff Crawford argues that "[i]t will be convenient and expedient to first resolve the question of succession of title to non-federal lands under Utah law" and then "[t]he prevailing

party may thereafter resolve question of title to federal lands, if any claim is remaining, in Federal Court." (Document #3, at 1.)

To rule on Plaintiff's motion, which essentially seeks to sever Defendants USDA-USFS from the rest of the case, the court must determine whether Defendants USDA-USFS are necessary and indispensable parties to this action. *See* Fed. R. Civ. P. 19; *Sac & Fox Nation v. Norton*, 240 F.3d 1250, 1258 (10th Cir. 2001), *cert. denied Wyandotte Nation v. Sac and Fox Nation of Missouri*, 534 U.S. 1078 (2002). Rule 19 of the Federal Rules of Civil Procedure defines who must be joined as a party in an action, and thus who is considered a necessary party to an action:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). The Tenth Circuit applies the two-part test set forth above as stated in Rule 19. *See Sac & Fox Nation*, 240 F.3d at 1258-59.

Applying the two-part test of Rule 19 to the instant case, the court concludes that Defendants USDA-USFS should not be severed from this case. Although Plaintiff Crawford claims that this action seeks to determine individual ownership of the Cardiff Fork Road right-of-way "obtained by and through non-federal Defendants," that "[n]o federal reacquisition of the right of way has occurred," that this "action does not seek fee simple title to any federal lands underlying the Cardiff Fork Road right of way," that "[s]uccession of title to the right of way from non-federal Defendants to Plaintiffs will not affect any federal management rights to the right of way that may exist, and no federal interests whatsoever are at issue by the petitioned order," (Document #22, at 2), the court cannot begin its analysis with such assumptions. Instead, the court must first determine issues such as whether an R.S. 2477 right-of-way on federal land exists; whether that R.S. 2477 right-of-way was once owned by Salt Lake County and/or the State of Utah; whether Salt Lake County and/or the State of Utah abandoned the R.S. 2477 right-of-way on federal land; and whether Plaintiffs are entitled to ownership of an R.S. 2477 right-of-way across National Forest property.[4]

---

[4]The court notes that both the State of Utah and Salt Lake County contradict Plaintiffs' assertions in their separate Answers. Both the State and the County allege that they do not know whether the route is an R.S. 2477 right-of-way, that if one exists the State and the County are joint owners, that neither the State nor the County has taken any steps to formally abandon

In addition, the court must acknowledge that Defendants USDA-USFS have asserted rights in the Cardiff Fork Road right-of-way. In his oral argument, the attorney for Defendants USDA-USFS asserted that the Cardiff Fork Road, which runs across National Forest land, is simply part of that land and therefore is federally owned and controlled. Furthermore, citing *Brown v. Oregon Short Line R.R. Co.*, 102 P. 740, 743 (Utah 1909), Defendants USDA-USFS argue in their pleadings that if the State of Utah and Salt Lake County have abandoned their purported interests in the Cardiff Fork Road right-of-way, as Plaintiff Crawford argues, that the abandoned right-of-way then reverted to the federal government as the underlying property owner, and not to Plaintiffs.

Also, because the United States owns the underlying property across which the Cardiff Fork Road allegedly passes, the United States' involvement is necessarily implicated in this action. As explained above, an R.S. 2477 right-of-way is a type of easement. An easement is "[a] right of use over the property of another." *Black's Law Dictionary*, 6th ed., at 509. Thus, the existence and scope of Plaintiff's alleged rights to use an easement crossing Defendants USDA-USFS's property implicates the property rights of Defendants USDA-USFS.

the right-of-way, and that instead, in 2003 the County simply "withdrew from consideration for R.S. 2477 claim status several roads including Mill D South Road (Cardiff Fork Road)." (Documents #5, at 2 and #6, at 2.)

14

As such, the declaratory relief Plaintiffs would seek in state court would necessarily implicate the property and management interests that Defendants USDA-USFS assert in the purported R.S. 2477 right-of-way.  Therefore, because Defendants USDA-USFS have asserted an interest in the disputed property in this case, the court concludes that Defendants USDA-USFS are necessary and indispensable parties to this action.

The court reiterates that it understands that Plaintiff Crawford has explained that he simply is seeking a declaratory judgment regarding the non-federal property interests involved in this case.  However, as the court has sought to explain above, such an action is not allowed under Rule 19 of the Federal Rules of Civil Procedure.  Therefore, Plaintiff's Motion to Sever Defendant and Remand to State Court is denied.

### C.  Defendant's Motion to Dismiss

Third, the court addresses Defendants' Motion to Dismiss. (Document #17.)  Defendants argue that the court should dismiss this action for lack of subject matter jurisdiction and failure to state a claim because Plaintiffs failed to plead under the Quiet Title Act (hereafter referred to as "the QTA"), and even if they had, individual members of the public cannot quiet title in an R.S. 2477 right-of-way.  Plaintiffs argue that the QTA does not apply to their complaint because the United States does not own the Cardiff Fork Road right-of-way; that the QTA does not apply because they are seeking relief under the Declaratory

15

Judgment Act; that their action is merely "to declare succession of title formerly held by Salt Lake County and the State of Utah, to plaintiffs" in the Cardiff Fork Road right-of-way; and that the Tenth Circuit ruled in *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005), that private parties can quiet title to R.S. 2477 rights-of-way.

### 1.   To Overcome Sovereign Immunity, Plaintiffs Must Plead Under the QTA

Federal courts are courts of limited jurisdiction and are empowered to hear only those cases authorized by Article III of the Constitution that have been entrusted to them under a jurisdictional grant by Congress. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986); *Henry v. Office of Thrift Supervision*, 43 F.3d 507, 511 (10th Cir. 1994). Because federal courts are courts of limited jurisdiction, this court may not presume jurisdiction. *See United States ex rel. Precision Co. v. Koch Indus.*, 971 F.2d 548, 551 (10th Cir. 1992), *cert. denied*, 507 U.S. 951 (1993). In addition, because sovereign immunity bars any suit against the United States absent congressional consent, *see Block v. North Dakota*, 461 U.S. 273, 287 (1983), "[j]urisdiction over any suit against the Government requires a clear statement from the United States waiving sovereign immunity. . . . The terms of consent to be sued may not be inferred, but must be unequivocally expressed." *United States*

*v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (citation omitted).

Therefore, Plaintiffs may not bring an action against Defendants USDA-USFS unless they do so in a way approved by Congress, in which Congress has waived sovereign immunity. Defendants USDA-USFS assert that the only way Plaintiffs may bring the instant action and not be barred by sovereign immunity is by pleading under the QTA.

Plaintiffs contend that they are seeking relief under the Declaratory Judgment Act. However, the Tenth Circuit has ruled that the Declaratory Judgment Act does not waive sovereign immunity for claims that challenge the United States' title to real property. *See Rosette, Inc. v. United States*, 141 F.3d 1394, 1396-97 (10th Cir. 1998). Instead, the Tenth Circuit held that only the QTA waives federal sovereign immunity for cases in which the United States asserts title to real property. *See id.*

In *Block v. North Dakota*, 461 U.S. 273, 275-76 (1983), the Supreme Court held that the QTA is the "exclusive means by which adverse claimants could challenge the United States' title to real property." 461 U.S. at 286. In other words, only through the QTA has "the United States, subject to certain exceptions, . . . waived its sovereign immunity and . . . permitted plaintiffs to name it as a party defendant in civil actions to adjudicate title disputes involving real property in which the United States claims an interest." *See id.* at 275-76 (footnote omitted). In

17

*Southwest Four Wheel Drive Association v. Land Management*, 363
F.3d 1069, 1071 (10th Cir. 2004), the Tenth Circuit reiterated
that the QTA is the exclusive means by which the federal
government's claim to title in real property can be challenged.

Plaintiffs argue that the QTA does not apply to their
action.  Plaintiffs explain that they seek a declaration of
succession of interest of the Cardiff Fork Road right-of-way from
the non-federal defendants to Plaintiffs.  Plaintiffs strongly
assert that they simply want a declaratory judgment not involving
Defendants USDA-USFS.  Plaintiffs argue that because Defendants
USDA-USFS do not have title to the Cardiff Fork Road right-of-
way, this is not a challenge to that title and, therefore, this
is not a quiet title action.

However, although Plaintiffs' argue that Defendants USDA-
USFS do not have title to the Cardiff Fork Road right-of-way,
Defendants USDA-USFS assert that if the County and State have
abandoned their interest in the R.S. 2477 right-of-way (assuming
that an R.S. 2477 right-of-way exists and that the State and
County shared ownership of that right-of-way), Defendants USDA-
USFS were the ones who then received that abandoned interest in
the right-of-way.  Thus, Plaintiffs seek a declaration of "vested
title" in the Cardiff Fork Road right-of-way and Defendants USDA-
USFS are asserting title to the right-of-way.  Therefore, under
*Block*, to overcome sovereign immunity, Plaintiffs must plead
their action under the QTA.

18

Because Plaintiffs have not brought their action under the QTA, their action is barred by sovereign immunity.  However, as discussed below, even if Plaintiffs amended their complaint to bring an action under the QTA in this case, they would fail to state a claim because their level of interest in the Cardiff Fork Road right-of-way does not rise to the level required to bring an action under the QTA.

> **2.  Even if Plaintiffs Amended Their Complaint, Tenth Circuit Law Prohibits Them From Bringing a Successful Quiet Title Action**

Plaintiffs claim the Cardiff Fork Road is an R.S. 2477 right-of-way.  Plaintiff Crawford alleges the R.S. 2477 grant was accepted in 1871 and proper notice was filed in the office of the Salt Lake County Recorder.  (Document #22, at 3.)  Plaintiff Crawford alleges a general public right of use of the Cardiff Fork Road right-of-way was established.  Plaintiff Crawford alleges that Defendants USDA-USFS do not have an interest in the Cardiff Fork Road right-of-way because of a long history of allegedly documented acknowledgment that it is a public right of access, including the alleged disclaimed interest in the Cardiff Fork Road in 1903, as allegedly acknowledged by the United States Surveyor General.  Plaintiffs claim that the State of Utah and Salt Lake County, who at one time allegedly jointly owned the Cardiff Fork Road right-of-way, allegedly both abandoned their interests in the Cardiff Fork Road right-of-way and that

Plaintiffs now are the vested owners of the Cardiff Fork Road right-of-way.

On the other hand, Defendants USDA-USFS argue that under Tenth Circuit law, private parties like Plaintiffs simply cannot own public easements, including R.S. 2477 rights-of-way. Defendants USDA-USFS rely on five main cases to establish this point.

The first and main case Defendants USDA-USFS rely upon is *Kinscherff v. United States*, 586 F.2d 159 (10th Cir. 1978) (*per curiam*).  In *Kinscherff*, the Tenth Circuit examined a lawsuit brought under the QTA which sought declaratory relief and damages against the United States and others.  According to the court, the complaint alleged "that the United States had built a road on its land to reach a dam site, and that it continues to control the use of this road.  The road is asserted to be the only access plaintiffs have to their property.  Plaintiffs are seeking to develop their land, but the United States would not let them use the road, which is adjacent to the property, to bring in equipment, machinery, or material."  *Id.* at 160.  The plaintiffs sought to establish a right to use the road for all purposes as members of the public and by way of necessity.  Citing to New Mexico state statutes and 43 U.S.C. § 932 (R.S. 2477), the plaintiffs asserted that they had a real property interest in the road as members of the public entitled to use public roads and as an owner of land abutting a public highway.

20

The court held that the "interest" asserted by the plaintiffs was not an interest in real property contemplated by the QTA, but, if it existed, it was vested in the public generally.  The court explained, "The plaintiffs, on this point, do not assert that their interest is an easement or any similar right; instead, as mentioned above, the right is claimed by them as members of the public.  The substantive law in New Mexico for quiet title actions refutes the notion that the public has a real property interest in public roads."  *Id.*  Citing to New Mexico state court decisions, the court explained that a quiet title action may be brought by anyone claiming an interest in the real property, but the interest must be some interest in the title to the property, because an attempt to remove a cloud from title presupposes that the plaintiff has some title to defend.  *See id.*

Between the citations to New Mexico law, the Tenth Circuit made the following statement Defendants USDA-USFS rely upon, and upon which other courts, discussed below, appear to rely: "Members of the public as such do not have a 'title' in public roads.  To hold otherwise would signify some degree of ownership as an easement.  It is apparent that a member of the public cannot assert such an ownership in a public road."  *Id.*  As a result of its analysis, the court held that the interest the plaintiffs sought to assert as members of the public was not of such a nature to enable them to bring an action under the QTA. *See id.* at 161.

Defendants USDA-USFS also rely on another more recent Tenth Circuit case coming out of New Mexico.  In *Southwest Four Wheel Drive Association v. Bureau of Land Management*, 363 F.3d 1069 (10th Cir. 2004), the plaintiff filed suit seeking a judgment granting to the public the title to certain roads on federal land.  *See id.* at 1070-71.  The Bureau of Land Management (hereafter referred to as "BLM") had closed the roads at issue after designating the area encompassing them a wilderness study area and declaring the area "roadless."  The court explained that the plaintiff could not meet the QTA's requirement to "'set forth with particularity the nature of the right, title, or interest which the plaintiff claims in the real property.'"  *Id.* at 1070 (quoting 28 U.S.C. § 2409a(d)).  Relying on the reasoning of *Kinscherff*, the court held that because "'[m]embers of the public . . . do not have "title" in public roads,' and therefore cannot meet the requirements of [the QTA]," the plaintiff's claim was indistinguishable from the one denied in *Kinscherff*.  *Id.* at 1071.

A third case Defendants USDA-USFS rely upon is *Long v. Area Manager, Bureau of Reclamation*, 236 F.3d 910 (8th Cir. 2001).  In this Eighth Circuit case, the plaintiff owned property near a reservoir in South Dakota.  The land that used to create the reservoir and an adjoining park was condemned by the federal government and then leased to the State of South Dakota.  The plaintiff brought suit to quiet title a right of access to his

property through the southern half of the park.  The plaintiff
claimed that his right to use the road to gain access to his
property from a certain area in the park was never taken during
the condemnation proceedings, and he thus was seeking to quiet
title that right.  The Eighth Circuit concluded that the
plaintiff's action was barred by the twelve-year statute of
limitations under the QTA.  The Eighth Circuit then noted, in
language relied upon by Defendants USDA-USFS:  "Even if we were
to find that Mr. Long's quiet title action is not barred by the
statute of limitations, moreover, it would fail because he does
not claim a property interest to which title may be quieted.
What Mr. Long seeks in this case is an undifferentiated right to
use what was once a public road."  *Id.* at 915.  Setting forth the
QTA's requirement that a plaintiff state "'the nature of the
right . . . or interest' that is asserted in the property," the
Eighth Circuit explained, citing to *Kinscherff*, "We agree with
the Tenth Circuit that the right of an individual to use a public
road is not a right or interest in property for purposes of the
Quiet Title Act.  The proper plaintiff to challenge the
condemnation of a public road is the governmental entity that
owns the easement."  *Id.* (citation omitted).

Defendants USDA-USFS also rely on two 2001 District of
Colorado cases.  In *Staley v. United States*, 168 F. Supp. 2d 1209
(D. Colorado 2001), the plaintiffs brought a claim seeking the
declaration, pursuant to R.S. 2477, of a public road that ran

across United States property.  As in this case, in *Staley* the
plaintiffs claimed that a public road was created by operation of
R.S. 2477, and the federal defendant argued that the court lacked
jurisdiction to hear the quiet title action where the plaintiff
was a private party who was seeking a right of access over a
public road.  Citing to *Kinscherff*, the court stated that "[t]he
Tenth Circuit has interpreted the Quiet Title Act as requiring a
plaintiff to have some interest in the title to the property."
*Id.* at 1212.  However, acknowledging that *Kinscherff* was
construing New Mexico law in reaching its holding, the court
examined Colorado law.  After examining Colorado law, the court
concluded, "While Plaintiffs may correctly assert that abutting
landowners may have rights beyond those of the general public in
certain public roads, the authorities cited above cannot be
fairly construed to mean that an abutting landowner has a title
interest in any public road such that they can maintain an action
under the Quiet Title Act.  The Court refuses Plaintiffs'
invitation to blur the lines between a title interest and a right
of access to a public road."  *Id.* at 1213 (citation omitted).
The court continued:

> When the Tenth Circuit found that the public
> does not have a real property interest in
> public roads under New Mexico law, it did so
> by reviewing that state's laws pertaining to
> quiet title actions.  Under New Mexico law,
> the interest necessary to pursue a quiet
> title action was an interest in the title to
> the property.  Contrary to Plaintiff's
> suggestion, Colorado law does not differ on

this point.  Like New Mexico, Colorado law
requires a plaintiff to possess an interest
in the title to the property in order to
maintain a quiet title action.  Therefore,
the Court finds that *Kinscherff* is
controlling in this case and Plaintiffs'
attempt to distinguish it on the basis of
differences between New Mexico and Colorado
substantive law is not persuasive.  The Court
holds that under the law of this circuit,
Plaintiffs do not have a title interest in a
public road that would properly invoke the
jurisdiction of the Court over Plaintiff's
First Claim for Relief.

*Id.* at 1213 (citations omitted).

The other Colorado case Defendants USDA-USFS rely upon is

*Fairhurst Family Association v. United States Forest Service,*

*Department of Agriculture*, 172 F. Supp. 2d 1328 (D. Colorado

2001).  In that case, the plaintiff sought a declaration under

the QTA confirming its right of access to certain properties via

an alleged public road and right-of-way across federal land

administered by the defendant United States Forest Service.  As

in the instant case, in *Fairhurst Family* the federal defendant

moved to dismiss the plaintiff's complaint for lack of

jurisdiction on the ground that the plaintiff lacked the

requisite ownership interest in the road and right-of-way to

maintain an action under the QTA.  Citing to *Kinscherff*, *Long*,

and *Staley*, the court agreed with the federal defendant.  The

court stated, "an R.S. 2477 right-of-way is, by definition, open

to all members of the public who wish to use it.  As such, under

*Kinscherff*, the real property interest in this easement vests in

25

the public generally and not in individual members of the public."  *Id.* at 1332 (citation omitted).

In determining whether the reasoning in *Kinscherff* and the other cases discussed above apply to the instant case, the court first examines Utah law regarding quiet title actions.  Under Utah law, a quiet title claim may be brought by a party to determine that party's interest in real or personal property when another party has made an adverse claim to that property.  *See Anderson v. Wilshire Investments, L.L.C.*, 123 P.3d 393, 400 (Utah 2005).  Utah's quiet title statute provides:  "An action may be brought by any person against another who claims an estate or interest in real property or an interest or claim to personal property adverse to him, for the purpose of determining such adverse claim."  Utah Code Ann. § 78-40-1.  Looking more closely at Utah quiet title cases, this court concludes that under Utah law, the party bringing a quiet title action must establish that it has legal title to the property.  *See, e.g., State, by and through Utah State Dep't of Soc. Servs. v. Santiago*, 590 P.2d 335, 337-38 (Utah 1979) ("[A] quiet title action, as its name connotes, is one to quiet an Existing title against an adverse or hostile claim of another and not one brought to Establish title."); *Ash v. State of Utah*, 572 P.2d 1374, 1376 (Utah 1977) ("In [an action to quiet title] . . . all the plaintiff needs to do is to prove prima facie that he has title, which if not overcome by defendant, is sufficient."); *Colman v. Butkovich*, 538

26

P.2d 188, 189 (Utah 1975) ("One cannot prevail on the weakness of

his adversary's title, but only on the strength of his own.");

*Gibson v. McGurrin*, 106 P. 669, 671 (Utah 1910) (explaining that

to bring a quiet title action, "it is sufficient if he

establishes that the legal title is in him, and that defendants

have no right, title, or interest adverse to him in the

premises"); *see also 1ˢᵗ Nat'l Credit Corp. v. Von Hake*, 511 F.

Supp. 634, 637 (D. Utah 1981) ("The purpose of [a quiet title

action under Utah law] is to judicially quiet an existing title

against an adverse or hostile claim by one or more others.").

        Having reviewed Utah quiet title cases, this court concludes

that Utah's law is similar enough to New Mexico law for

*Kinscherff* to apply to this case.  This court is particularly

persuaded by language from the Utah 1979 *Santiago* decision.   In

that case, the Utah Supreme Court explained:

> [A] quiet title action, as its name connotes,
> is one to quiet an Existing title against an
> adverse or hostile claim of another and not
> one brought to Establish title.   One seeking
> such equitable relief must allege title,
> entitlement to possession, and that the
> estate or interest claimed by others is
> adverse or hostile to the alleged claims of
> title or interest.   Hence it is to be seen
> that the effect of a decree quieting title is
> not to Vest title but rather is to Perfect an
> existing title as against other claimants.

*Santiago*, 590 P.2d at 337-38.   Plaintiffs here are seeking to

establish title under Utah Code Annotated § 72-5-105 by arguing

the State and County have abandoned the R.S. 2477 right-of-way;

                                    27

Plaintiffs are not asserting that title already has been established.[5]

Plaintiffs argue that, contrary to the cases discussed above, recent Tenth Circuit case law establishes that private parties, such as themselves, can obtain title to an R.S. § 2477 right-of-way. Plaintiffs quote from *Southern Utah Wilderness Alliance v. Bureau of Land Management*, 425 F.3d 735 (10th Cir. 2005). As part of its discussion regarding how state law often resolves R.S. 2477 controversies, the Tenth Circuit offered the following quote, taken from a 1902 Department of Interior decision in which the Department of Interior considered whether toll roads could be R.S. 2477 highways, and in which the Department of Interior drew from state court decisions, common law treatises, and legal dictionaries:

> Section 2477 of the Revised Statutes grants "the right of way for the construction of highways over the public lands not reserved for public uses." A highway is "a road over which the public at large have a right of passage" (Dic.Loc.V.) and includes "every thoroughfare which is used by the public, and is, in the language of the English books, "common to all the King's subjects" (3 Kent. Com., 432). Toll roads are highways, and differ from ordinary highways merely in the fact that they are also subjects of property

---

[5]The court notes that under Utah Code Annotated § 72-5-105, the statute upon which Plaintiffs rely to make their claim of title in the right-of-way, it appears that to have title vest in Plaintiffs, as the alleged "adjoining record owners," "recordation of an order executed by the proper authority with the county recorder's office" must first occur. *See* Utah Code Ann. § 72-5-105(2)(a).

28

> and the cost of their construction and
> maintenance is raised by a toll from those
> using them, instead of by general taxation. .
> . . A highway may be a mere footway.  (*Tyler
> v. Sturdy*, 108 Mass., 196 [1871].)  Neither
> the breadth, form, degree of facility, manner
> of construction, *private*, corporate, or
> public ownership, or source or manner of
> raising the fund for construction and
> maintenance, distinguishes a highway, but the
> fact of general public right of user for
> passage, without individual discrimination,
> is the essential feature.  The necessities
> and volume of traffic, difficulties of route,
> and funds available for construction and
> maintenance, will vary the unessential
> features, but the fact of general public
> right of user for passage upon equal terms
> under like circumstances is the one constant
> characteristic of a highway.

*Southern Utah Wilderness Alliance*, 425 F.3d at 764 (quoting *The

Pasadena and Mount Wilson Toll Road Co. v. Schneider*, 31 Pub.

Lands Dec. 405, 407-08 (1902)) (emphasis added).  Thus,

Plaintiffs have seized upon the mention, in this 1902 Department

of Interior opinion, of private ownership of a highway as support

for their position.

   The court has read numerous cases involving R.S. 2477

rights-of-way to determine whether private parties have been

allowed to acquire an R.S. 2477 right-of-way.  The court has

found numerous cases in which a public entity was allowed to

assert its interest in an R.S. 2477 right-of-way.  *See, e.g., San

Juan County, UT v. United States*, 420 F.3d 1197 (10th Cir. 2005);

*Sierra Club v. Lujan*, 949 F.2d 362 (10th Cir. 1991); *Sierra Club

v. Hodel*, 848 F.2d 1068 (10th Cir. 1988); *The Wilderness Society*

*v. Kane County,* Utah, 2006 WL 2471518 (D. Utah August 24, 2006); *Southern Utah Wilderness Alliance v. National Park Serv.*, 387 F. Supp. 2d 1178 (D. Utah 2005); *The Wilderness Society v. United States Dep't of Interior*, 2005 WL 3276256 (D. D.C. September 12, 2005). Many cases emphasize that R.S. 2477 rights-of-way are public highways. *See, e.g., Alleman v. United States*, 372 F. Supp. 2d 1212 (D. Or. 2005). In *Skranak v. Castenada*, 425 F.3d 1213 (9th Cir. 2005), the Ninth Circuit court mentions that the Forest Service had determined, though cursorily, that the private plaintiffs did not have an R.S. 2477 easement. *See id.* at 1219. However, no explanation of the Forest Service's reasoning is given, so it is unclear whether the Forest Service determined it was possible for private parties to acquire an R.S. 2477 right-of-way. In another Ninth Circuit case, *Shultz v. Department of Army*, 96 F.3d 1222 (9th Cir. 1996) (*per curiam*), *cert. denied*, 523 U.S. 1072 (1998), the court issued a very cursory opinion finding that the private party plaintiff, who had asserted he had a right-of-way under R.S. 2477, Alaska common law, or both, had not sustained his burden to factually establish a continuous R.S. 2477 route. In addition, in *Adams v. United States*, 3 F.3d 1254 (9th Cir. 1993), where a private party asserted an easement under R.S. 2477, the court noted that "[e]ven if the [private party plaintiffs] had an easement under R.S. 2477, they would still be subject to reasonable Forest Service regulations." *Id.* at 1258

30

n.1.  However, neither *Skranak* nor *Adams* actually addresses the issue of whether a private party can acquire title to an R.S. 2477 right-of-way.  Similarly, the quote offered by Plaintiffs in the *Southern Utah Wilderness Alliance* case, which mentioned private ownership of highways, does not address the issue, but merely suggests a possibility in passing.  On the other hand, a federal court in Oregon has also adopted the reasoning in *Kinscherff* and held that a private landowner's interest in an R.S. 2477 right-of-way was insufficient to allow him to bring a suit under the QTA.  *See Alleman*, 372 F. Supp. 2d at 1225-26. The federal Oregon district court explained,

> Although the court in *Kinscherff* relied in
> part on New Mexico state law in determining
> that only parties claiming title may bring a
> quiet title action for a public road, Oregon
> law also only allows parties claiming title
> to the property to bring a quiet title
> action. . . . The court finds that
> plaintiffs' 'interest' as members of the
> public in using the routes, is insufficient
> to bring an action to have the roads declared
> R.S. 2477 roads under the Quiet Title Act.

*Id.* at 1225-26.  The court's research has not revealed a case that holds that a private plaintiff can acquire title to an R.S. 2477 right-of-way.  Therefore, the court has found no legal support for Plaintiffs' position.

Plaintiffs in this case are seeking, under a rather elaborate theory of succession of title, to establish that they have vested title in the Cardiff Fork Road right-of-way pursuant to Utah Code Annotated § 72-5-105.  Thus, they are not seeking to

quiet an existing title against an adverse or hostile claim of another, but they are seeking, as private parties, to establish title in an R.S. 2477 right-of-way across National Forest property.  Such an action cannot be pursued under Utah law, as established by the *Santiago* decision, nor by Tenth Circuit precedent, as established by *Kinsherff* and *Southwest Four Wheel Drive Association*.  Unfortunately for Plaintiffs in this case, they find themselves similarly situated to the plaintiffs in *Southwest Four Wheel Drive Association*, where the Tenth Circuit explained that if the plaintiff could not state a claim under the QTA, the plaintiff had "no other recourse against the United States."  363 F.3d at 1071.

As a result, this court recommends that Defendants USDA-USFS' Motion to Dismiss be granted because "a member of the public cannot assert such an ownership in a public road." *Kinscherff*, 586 F.2d at 160.  Plaintiffs' claim is barred by sovereign immunity because they did not plead under the QTA. Furthermore, even if they were given an opportunity to amend their complaint, Plaintiffs cannot assert title in an R.S. 2477 right-of-way, and therefore they cannot state a claim under the QTA.

### D.  Plaintiff's Motion for an Injunction

Plaintiff Crawford also filed a motion requesting an injunction enjoining Defendants USDA-USFS from interfering with Plaintiffs' use of the Cardiff Fork Road during the pendency of

this action.   (Document #14.)   The court concludes that its
decision to grant Defendant's Motion to Dismiss renders moot this
motion.

However, even if this motion were not rendered moot, the
court concludes Plaintiff's motion is not allowed under the QTA
and would have been denied.   The court has established above that
Plaintiffs would be required to bring their action under the QTA
or be barred by sovereign immunity.   The QTA provides, "No
preliminary injunction shall issue in any action brought under
this section."   28 U.S.C. § 2409a(c).

Therefore, Plaintiff's motion is moot; however, even if
Plaintiff's motion were not moot, it would be denied as
prohibited by the QTA.

### E.   Despite the Conclusion that Plaintiffs
### are Barred by Sovereign Immunity,
### the Case was Properly Removed to Federal Court

Plaintiffs understandably argue that if this court lacks
jurisdiction over their action, then the action was improperly
removed from state court to this court.   Plaintiffs overlook that
Defendants USDA-USFS are necessary parties to this action, as
discussed above, and under 28 U.S.C. § 1442(a)(1), actions
commenced against an agency of the United States may be removed
to federal court.   Furthermore, the United States District Court
has original, exclusive jurisdiction over civil actions to quiet
title to property "in which an interest is claimed by the United
States."   28 U.S.C. § 1346(f).   In addition, because Plaintiffs

33

allege their title arose under R.S. 2477, a federal statute, the United States District Court has original jurisdiction.  *See* 28 U.S.C. § 1331.  Any action over which the federal court has original jurisdiction may be removed from state court.  *See* 28 U.S.C. § 1441(a), (b).

The court notes that a state court would also be required to find that Plaintiffs' action is barred by sovereign immunity.[6]

### ORDER

Based on the above analysis, **IT IS HEREBY ORDERED** that (1) Plaintiff's Motion to Sever and Remand to State Court (**Document #3**) is **DENIED** and Plaintiff's Motion for Injunction (**Document #14**) is **MOOT**.  In addition, Plaintiff's Motion for Leave to File Supplement to Plaintiff's Opposition to the Federal Defendant's Motion to Dismiss (**Document #40**) is **DENIED** because it fails to address the jurisdictional issues before the court on Defendants' Motion to Dismiss.

---

[6]Additionally or alternatively, Plaintiffs claim in one of their pleadings that they enjoy a "perpetual private right of ownership." (Document #20, at 4.)  Plaintiffs argue that although privately accepted, the original grant acceptance was valid because the road was open for general public use. Plaintiffs argue that "[s]uch private ownership has never been relinquished."  The court notes that this claim is only mentioned in Plaintiffs' one pleading, Plaintiff Crawford's Reply Memorandum to Motion for Injunction (Document 20, at 4), that it was not developed either in that pleading or any other pleading, and it was not developed at oral argument.  The court can neither discern Plaintiff's claim nor the basis – factual or legal – for it.  As a result, the court concludes Plaintiff has abandoned this claim and the court does not address it.

## RECOMMENDATION

Furthermore, **IT IS RECOMMENDED** that the court **DENY** Plaintiff's Motion for Default Judgment (**Document #33**) and **GRANT** Defendants' Motion to Dismiss (**Document #17**).

Copies of the foregoing Report and Recommendation are being mailed to the parties who are hereby notified of their right to object to the same. The parties are further notified that they must file any objections to the Report and Recommendation, with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

DATED this _25th_ day of September, 2006.

BY THE COURT:


Samuel Alba
United States Chief Magistrate Judge

35